UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL ROWE,<br><br>        Plaintiff,<br><br>  v.<br><br>CORCORAN STATE PRISON,<br><br>        Defendants.<br>                                        / | CV F   00 6843 AWI LJO P<br><br>FINDINGS AND RECOMMENDATIONS REGARDING MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT<br>(Doc. 84) |

**I. PROCEDURAL HISTORY**

      Daniel Rowe ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

      Plaintiff filed the instant action on October 30, 2000. (Doc. 1.) On March 23, 2001, Plaintiff filed a pleading which he titled "Amended Complaint." However, because the document lacked much of the information required of a Complaint, the Court dismissed the complaint with leave to amend and further explained the information needed from Plaintiff before the Court could proceed. (Docs. 10, 11.)

      On July 27, 2001, Plaintiff filed another "Amended Complaint." (Doc. 12.) However, this document again failed to provide the Court with the necessary information. The Court

1

issued Findings and Recommendations on July 31, 2001, that the action be dismissed. (Doc. 13.)

On October 24, 2001, Plaintiff filed yet another "Amended Complaint." (Doc. 16.) The Court again dismissed the Complaint because Plaintiff failed to provide sufficient information regarding whether he had exhausted his administrative remedies. (Doc. 17.) Plaintiff filed a "Third Amended Complaint on February 4, 2002, asserting that he had complained about the alleged constitutional violations to the State Board of Control. (Doc. 18.) On September 10, 2002, the Court issued Findings and Recommendations on the basis of Plaintiff's failure to exhaust administrative remedies. (Doc. 20.) Plaintiff filed Objections to the Findings and Recommendations on September 19, 2002, alleging that he had submitted an inmate grievance but never received a response. (Doc. 21.) Because exhaustion is an affirmative defense, Wyatt v. Terhune, the Court vacated its Findings and Recommendations and again dismissed the Complaint with leave to amend. (Doc. 22.)

On January 13, 2003, Plaintiff filed his "Fifth Amended Complaint." (Doc. 25.) The Court found that this Complaint stated a cognizable excessive force claim against Defendants Smyth, Tomlin, Escalera, Olivarria, Cribbs, Recek and Pear; a cognizable supervisory liability claim against defendants Castro, Ortiz and Land; and a cognizable Eighth Amendment medical claim against defendant Conklin. Based on this finding, the Court ordered service of the complaint.

On August 25, 2004, Defendants filed a Motion to Dismiss the action, or, in the alternative, a Motion for Summary Judgment. (Doc. 84.) Plaintiff filed his Opposition to the Motion to Dismiss/Motion for Summary Judgment on April 10, 2005. (Doc. 90.)

## II. UNENUMERATED 12(b) MOTION TO DISMISS - EXHAUSTION

### A. Procedural Standard

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). On May 29, 2001, the Supreme Court of the

United States issued Booth v. Churner, 532 U.S. 731 (2001). In Booth, the Court resolved a split among the Circuit Courts by holding that 42 U.S.C. § 1997e(a) requires that inmates seeking only money damages must complete the prison's administrative process if that process can provide some sort of relief on the complaint stated, even if the process cannot provide money.[1] Booth, 532 U.S. at 734. Following the decision in Booth, prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated.[2] Booth, 532 U.S. at 741.

The California Department of Corrections has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084, et seq. "Any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy which they can reasonably demonstrate as having an adverse effect upon their welfare." Id. at § 3084.1(a). Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level." See Cal. Code Regs. tit 15, § 3084.5.

The Ninth Circuit has held that section 1997e(a) of the PLRA does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, No. 00-16568, 2003 WL 18500, at *8 (9th Cir. Jan. 2, 2003). The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a

---

[1] The Booth v. Churner decision effectively overruled the portion of Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999), cert. denied, 120 S.Ct. 787 (2000), which provided that the exhaustion of administrative remedies was not required if a prisoner's section 1983 claim seeks only money damages and the grievance process does not allow for such an award. Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999).

[2] When the Supreme Court of the United States "applies a rule of federal law to the parties before it," as the Court did in Booth, "that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the] announcement of the rule." Harper v. Virginia Dep't of Taxation, 509 U.S. 86, (1993); see also United States v. Newman, 203 F.3d 700, 701-02 (9th Cir. 2000); Jorss v. Vanknocker, No. C97-3719CRB(PR), 2001 WL 823771, at *2 (N.D. Cal. July 19, 2001) (rejecting argument that the Supreme Court's decision in Booth does not apply retroactively). Thus, the Supreme Court's holding in Booth applies to the instant action, even though this action was filed prior to the issuance of that decision.

summary judgment motion. Wyatt v. Terhune, 2003 WL 18500, at *8, *citing* Ritza v. In'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (*per curiam*).

In deciding a Motion to Dismiss for failure to exhaust administrative remedies, the court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 2003 WL 18500, at *8. If the court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Id.

**B. Analysis**

In this case, Defendant's argue that Plaintiff failed to exhaust his administrative remedies because he states he "never received his appeal back" and that "they never seemed to process my appeal." The Court has examined the Fifth Amended Complaint in which Plaintiff states that he filed a 602 regarding the events at issue in this action and received no response. Defendants argue that despite not having received a response, Plaintiff should have filed an appeal at the next level. Although the Ninth Circuit has yet to address this issue, many Circuit Courts have addressed the effect of prison officials' failure to respond to grievances in a timely manner, and have held that exhaustion occurs when prison officials fail to respond to a grievance within the policy time limits. Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) (administrative remedies are exhausted when prison officials fail to timely respond to properly filed grievance); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002) (the failure to respond to a grievance within the policy time limits renders remedy unavailable); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) (when prison officials fail to respond, the remedy becomes unavailable, and exhaustion occurs); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001) (district court did not err when it declined to dismiss claim for failure to exhaust where prison failed to respond to grievance); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999) (when a valid grievance has been filed and the state's time for responding has expired, the remedies are deemed exhausted); Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998) (when time limit for prison's response has expired, the remedies are exhausted); see also Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (recognizing that a remedy prison officials prevent a prisoner from utilizing is not an available remedy); Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002) (formal

grievance procedure not available where prison officials told prisoner to wait for termination of investigation before filing formal grievance and then never informed prisoner of termination of investigation); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy prison officials prevent a prisoner from utilizing is not an available remedy).  The Defendants in this case, however, do not address this and rely solely on Plaintiff's statement that he never received a response as evidence that he failed to exhaust.

As stated in the preceding section, on an unenumerated 12(b) motion, it is the Defendant who bears the burden of raising and proving the failure to exhaust.  Here, Defendants set forth no evidence that Plaintiff failed to file an appeal regarding the events at issue in this action.  Accordingly, the Court finds that Defendants have failed to meet their burden of raising and proving that Plaintiff failed to exhaust his administrative remedies and the Motion to Dismiss should be denied.

**III.  MOTION FOR SUMMARY JUDGMENT**

    **A.  Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the

5

nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v.

Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**B. Undisputed Facts**[3]

    **1. Cell Extraction**

        a. On April 11, 200, Plaintiff repeatedly refused to surrender his dinner tray and to allow staff to close his cell door foodport.

        b. Lieutenant Castro was subsequently advised of this situation and made his own attempt to persuade Plaintiff to relinquish his dinner tray and permit his foodport to be closed. However, Plaintiff again refused.

        c. At this time, Castro advised the on-duty Watch Commander of the situation and of the need to obtain approval to do a tactical cell extraction.

        d. Lieutenant Castro next advised Captain Ortiz, the Administrative Officer of the Day (AOD), of the situation. Captain Ortiz concurred with Castro's request to do a cell extraction and stated that he would report to the scene immediately.

        e. Shortly thereafter, a Doctor Wynn approved the imminent use of the "OC"

---

[3] Plaintiff neither admitted or denied the facts set forth by Defendants as undisputed nor filed a separate Statement of Disputed Facts. Local Rule 56-260(b). Therefore, the Court compiled the Statement of Undisputed Facts from Defendants' Statement of Undisputed Facts, Plaintiff's verified Fifth Amended Complaint and Opposition. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (verified Complaints and Oppositions constitute opposing affidavits for purposes of the summary judgment rule if they are based on facts within the pleader's personal knowledge). Because Plaintiff neither submitted his own Statement of Disputed Facts nor addressed Defendants' Statement of Undisputed Facts, the Court accepts Defendants' version of the facts where Plaintiff's verified complaint and Opposition are not contradictory.

pepper spray for the cell extraction.

f. Next, Medical Technical Assistant Conklin attempted to conduct a clinical intervention with Plaintiff, but Plaintiff refused to speak with Conklin.

g. In preparation for the cell extraction, Lt. Castro ordered Sgt. Land to assemble and ready the extraction team, which Sgt. Land did.

h. Cpt. Ortiz subsequently arrived at the scene and due to Plaintiff's continued refusals to surrender his dinner tray and to allow prison staff to close his foodport, Cpt. Ortiz approved the tactical cell extraction and the use of pepper spray.

I. After this, Lt. Castro approached Plaintiff's cell door and, one last time, ordered Plaintiff to comply with his lawful orders regarding release of the dinner tray and closure of the cell door foodport. He further advised Plaintiff that if he did not comply, a cell extraction using pepper spray on Plaintiff's person would result.

j. In response to Castro's final entreaty and warning, Plaintiff responded, "come in and get me."

k. Due to Plaintiff's repeated refusal to cooperate with prison staff's lawful orders, Lt. Castro administered a single three-four second burst of pepper spray in to the cell. Plaintiff did not appear to be suffering from the effects of the pepper spray, thus, the cell extraction team initiated the extraction process.

l. After Plaintiff was successfully pinned on the ground by the extraction shield, Officer Pear grabbed Plaintiff's right wrist with both hands, Officer Cribbs grabbed Plaintiff's left wrist with both hands, and Officer Tomlin removed the shield.

m. Next, Officers Pear and Cribbs forced Plaintiff into a face-down prone position and secured him in handcuffs.

n. Officer Pear then assisted Plaintiff to a standing position, and Plaintiff was escorted from the cell to a grassy area where he was decontaminated with

water.

o. Officer Pear was injured during the cell extraction incurring a "1/4" avulsion" to his right hand middle finger and a scratch to his left wrist area.

p. Plaintiff was charged and found guilty of a disciplinary infraction for attempted Battery on a peace officer.

### 2. The Medical Evaluation

q. Immediately following the cell extraction, Medical Technical Assistant (MTA) Conklin washed Plaintiff down with cool running water to decontaminate him from the effects of the peppers spray.

r. Conklin also evaluated Plaintiff for physical injuries, and noted that he had a small contusion of the left temple; a minimal nose bleed under control; and small evulsion of the lower lip.

s. In light of her evaluation of Plaintiff, Conklin concluded that Plaintiff was "stable" and medically cleared him to be re-housed.

t. Approximately twenty minutes later, Conklin examined and treated Pear who had injured his finger during the extraction.

**C. Analysis**

### 1. Excessive Force Claim

Plaintiff's allegation is that force was used during the cell extraction "for no reason." (Opposition at 3.)

The use of excessive force by a prison official violates the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992). When a prison security measure is undertaken in response to a incident as in this case, the question of whether the measures taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 4, 5-7, 112 S.Ct. 995, 999 (1992).

Factors relevant to the analysis are the need for the application of force, the relationship between the need and the amount of force that was used and the extent of the injury inflicted.

Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078 (1986).  Other factors to be considered are the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.  Id. at 321.  The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary." Whitley v. Albers, *supra* at 319; see also, Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992).  Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 321-322 (*quoting* Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861 (1970).

The undisputed facts and evidence provided by Defendants show that on April 11, 2000, Plaintiff repeatedly refused to surrender his dinner tray and allow staff to close his cell door foodport. (Undisputed Fact ["UF"] "a.")  Defendants Castro and Conklin made repeated attempts to get Plaintiff to comply and warned that his noncompliance would result in a cell extraction with the use of pepper spray.  (UF "I.")  Plaintiff's response was  "come in and get me." (UF "j.")  Plaintiff was sprayed with the pepper spray and when he did not appear to be suffering from the effects of the spray, he was physically subdued.  (UF "k, l, m")   During the extraction, Plaintiff continued to resist staff such that Officer Pear was injured during the extraction.  (UF "o, t;"  Exh. 6, Mingo Decl.)   After Plaintiff was subdued, he was handcuffed, placed in leg restraints and then removed outdoors to a grassy area where he was decontaminated.  (UF "n, o, q.")   Plaintiff was later charged and found guilty of a disciplinary infraction for attempted battery on a peace officer.  (UF "p;"  Exh.  7, Mingo Decl.)

The Court finds Defendants have met their initial burden of informing the Court of the basis of the motion and identifying those portions of the record believed to demonstrate the absence of a genuine issue of material fact.  Accordingly, the burden shifts to Plaintiff to demonstrate that a genuine issue of material fact exists.  See, Matsushita Elec. Indus.Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Plaintiff provides no evidence to dispute any of the facts or evidence provided by Defendants. As noted above, in attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11.

Plaintiff does not deny that the cause of the cell extraction was his refusal to comply with staff orders to surrender his food tray and allow staff to close his cell door foodport. His chief complaint in this action is that force was used. However, he does not allege let alone provide evidence that the force used was for the sole purpose of causing harm or was beyond what was necessary. See, Hudson v. McMillian, 503 U.S. 1, 4, 5-7, 112 S.Ct. 995, 999 (1992). The evidence that Plaintiff remarked "come in and get me" supports staff's conclusion that Plaintiff had no intention of complying with staff orders and that a cell extraction to "maintain and restore discipline" was necessary. It is also undisputed that Plaintiff resisted Correctional Officers to such that both he and an Officer participating in the cell extraction were injured, although minimally. (UF "o, t;" Exh. 6, Mingo Decl.) Plaintiff's subsequent disciplinary infraction for attempted battery on a peace officer is supporting evidence of Plaintiff's defiant conduct warranting the use of physical intervention by Officers. (UF "p;" Exh. 7, Mingo Decl.)

In light of the above, the Court finds the Plaintiff fails to demonstrate a genuine material issue of fact warranting trial. The Defendants are therefore entitled to judgment as a matter of law on the excessive force allegation.

### 2. Supervisory Liability Claim

Generally, there is no respondeat superior liability under § 1983. Jones v. Williams, 297 F.3d 930, 934 (9th Cir.2002), *quoted in* Bell v. Clackamas County, 341 F.3d 858, 867 n. 3 (9th Cir.2003). "A supervisor may be liable under § 1983 only if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir.2001)(*per curiam*). In other words, supervisors "can be held liable 'only if they play an affirmative part in the alleged deprivation of constitutional rights,' [i.e. by]

'set[ting] in motion a series of acts by others ..., which he knew or reasonably should have known, would cause others to inflict the constitutional injury.' " Graves v. City of Coeur D'Alene, 339 F.3d 828, 848 (9th Cir.2003) (*citations omitted*) (*quoting* Rise v. Oregon, 59 F.3d 1556, 1563 (9th Cir.1995); Larez v. City of LA, 946 F.2d 630, 646 (9th Cir.1991)).

As noted above, supervisors can only be liable if there was an underlying constitutional violation by the extraction officers. See Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir.2001)(*per curiam*). Because the Court finds no disputed issue of fact on the underlying excessive force claim, there can be no finding of supervisory liability for excessive force.

### 3. Medical Claim

In this case, Plaintiff alleges that Defendant Conklin was deliberately indifferent to his medical needs because when Plaintiff was removed to the rotunda following the cell extraction, Defendant Conklin did not tend to his wounds although she was standing nearby.

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard involves an objective and a subjective prong.

First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (*citing* Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer v. Brennan, 511 U.S. at 837. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Id.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), *citing* Estelle, 429 U.S. at 105-06. "[A] complaint that a physician has been negligent in diagnosing or

treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Defendant contends that Plaintiff fails to establish deliberate indifference because his injury was not "sufficiently serious." Defendant provides documentary evidence that following the cell extraction and spraying of Plaintiff with pepper spray, Plaintiff was removed to a grassy area wherein he was decontaminated with cool running water by Defendant Conklin. (Exhibit 4, 5, to Mingo Decl.) The medical report completed by Defendant Conklin at 2116 hours (six minutes following the cell extraction), indicates that Defendant Conklin examined Plaintiff and noted he had a small contusion on the left temple, a minimal nosebleed that was under control, and a small evulsion of the lower lip. (Exhibit 4, Mingo Decl.) Conklin found Plaintiff's condition stable and cleared him for re-housing. Id.

Based on the above, the Court finds Defendants have met their initial burden of informing the Court of the basis of the motion and identifying those portions of the record believed to demonstrate the absence of a genuine issue of material fact. Thus, the burden now shifts to Plaintiff to demonstrate that a genuine issue of material fact exists. See, Matsushita Elec. Indus.Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Plaintiff alleges that Defendant Conklin saw him bleeding following the extraction and did nothing. He further contends that staff generally denied him medical treatment "every time I requested it." (Opposition at 3.) However, he provides no specific information or evidence regarding who he asked and when. Plaintiff neither alleges or provides evidence to demonstrate that his injuries were "sufficiently serious" or that Defendant Conklin's treatment of them was

13

unreasonable and in disregard of a serious risk to his health.  Although Plaintiff states that his wounds were "serious" the evidence he provides is the very report created by Defendant Conklin following the extraction.  The report supports Defendant's contention that Plaintiff's wounds were minor in that Plaintiff had a bruise, a tear on his lip and a minor nosebleed - conditions not "sufficiently serious" that his being cleared for re-housing would constitute a serious risk to his health.

Plaintiff further fails to demonstrate that Defendant Conklin was deliberately indifferent.  Contrary to Plaintiff's assertion, the evidence shows that Defendant Conklin examined Plaintiff immediately following the cell extraction and decontamination and noted only minor injuries.  (Exh. 4, Mingo Decl.)  Plaintiff provides no evidence that Defendant knew of a serious risk to his health beyond the minor injuries visible on April 11, 2000.

Accordingly, based on the above, the Court finds Plaintiff has failed to demonstrate a genuine issue of material fact warranting trial and Defendant Conklin is entitled to judgment as a matter of law on the Eighth Amendment claim.

## IV.  CONCLUSION AND RECOMMENDATION

The Court HEREBY RECOMMENDS that the Motion to Dismiss the action for failing to exhaust administrative remedies be DENIED.  The Court further RECOMMENDS that the Motion for Summary Judgment on Plaintiff's excessive force claim against Defendants Smyth, Tomlin, Escalera, Olivarria, Cribbs, Recek and Pear, the supervisory liability claim against Defendants Castro, Ortiz and Land, and the medical care claims against Defendant Conklin be GRANTED and the action DISMISSED.

The Court ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed

within TEN (10) court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     May 27, 2005**                              **/s/ Lawrence J. O'Neill**
b9ed48                              UNITED STATES MAGISTRATE JUDGE